UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

FREDERICK L. WINFIELD, ZULMA G.
MUNIZ, JAMES STEFFENSEN and ADORAM
SHEN, Individually and On Behalf of          10 Civ. 7304 (JGK)
All Others Similarly Situated,

                      Plaintiffs,          OPINION AND ORDER

       - against -

CITIBANK, N.A.,

                      Defendant.
────────────────────────────────

JOHN G. KOELTL, District Judge:

    The plaintiffs, Frederick L. Winfield, Zulma G. Muniz,
James Steffensen, and Adoram Shen ("the plaintiffs"), bring this
purported class action on behalf of themselves and all others
similarly situated against the defendant, Citibank, N.A. ("the
defendant").  The plaintiffs are personal bankers who were
previously employed by the defendant.  They were classified as
"non-exempt" employees and therefore eligible for overtime
payments under federal and state laws but claim that they were
not paid overtime for which they should have been paid.  The
plaintiffs bring claims under the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and various
state laws.  The defendant now moves to dismiss the plaintiffs'
ERISA claims; to dismiss plaintiff Shen's claim under California

law and to strike the allegations asserted in that claim; and to strike the plaintiffs' claims for injunctive relief.

### I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II.

The following facts alleged in the Amended Complaint are accepted as true for the purposes of this motion to dismiss, unless otherwise indicated.  The plaintiffs are personal bankers who were previously employed by the defendant.  (Am. Compl. ¶ 12.)  Their primary job responsibility was to sell the defendant's financial products and services to the general public in Citibank branches throughout the United States.  (Am. Compl. ¶ 21.)  They bring this purported class action on behalf of themselves and other future, current and former employees of Citibank who are similarly situated, asserting claims under ERISA and the FLSA ("the purported ERISA class" or "the

purported FLSA class"). Plaintiffs Winfield, Muniz and Shen also bring purported class claims on behalf of District of Columbia, Illinois, and California subclasses, respectively, alleging violations of those states' laws. (Am. Compl. ¶¶ 14-16.)

The plaintiffs allege that, during their employment with the defendant, they and members of the purported FLSA class were classified as "non-exempt" employees and therefore eligible for overtime payments under federal and state laws. (Am. Compl. ¶ 22.) The plaintiffs claim, however, that the defendant has failed to pay them and the purported FLSA class the overtime compensation to which they were entitled and has thereby violated the FLSA and the laws of the District of Columbia, Illinois, and California. (Am. Compl. ¶¶ 84-120.)

The plaintiffs also allege that the defendant was a plan sponsor and fiduciary of the Citigroup 401(K) Plan ("the Plan"), an employee pension benefit plan within the meaning of § 3(2) of ERISA and an employee benefit plan within the meaning of § 3(3) of ERISA. (Am. Compl. ¶¶ 18, 70, 80.) The Plan provides matching funds for contributions made by employees. These contributions are calculated as a percentage of employees' eligible pay, which is defined as compensation paid to employees, including overtime pay. (Am. Compl. ¶¶ 72-73; Citigroup 401(K) Plan, attached as Ex. 1 to Supplemental Decl.

4

of Jean Roma in Supp. of Def.'s Mot. to Dismiss ("Plan") at 6;
Citigroup 401(K) Plan: Prospectus and summary plan description,
attached as Ex. 1 to Decl. of Jean Roma in Supp. of Def.'s Mot.
to Dismiss ("Summary Plan Description") at 6.)   The parties
dispute whether contributions under the Plan are linked only to
actual compensation paid to employees or also to the number of
hours worked by employees, for which compensation may have been
earned but not actually paid.   The plaintiffs allege that the
defendant has breached its fiduciary duties under ERISA by
failing to credit overtime work performed by the plaintiffs and
members of the purported ERISA class as eligible compensation
under the Plan.   (Am. Compl. ¶¶ 77-83.)   The plaintiffs seek an
injunction requiring the defendant to credit all members of the
purported ERISA class with eligible compensation under the Plan
for the past and future overtime work those individuals have
performed or will perform.   (Am. Compl. ¶ 82.)

    The plaintiffs also allege that the defendant has failed to
maintain records indicating the hours that they and all members
of the purported ERISA class have worked in excess of forty
hours per week.   (Am. Compl. ¶¶ 69, 74.)   The plaintiffs claim
that, by failing to do so, the defendant has violated the
record-keeping requirement set forth in section 209(a)(1) of
ERISA.   (Am. Compl. ¶¶ 68-76.)   The plaintiffs seek injunctive

and equitable relief to remedy this alleged violation of ERISA.
(Am. Compl. ¶¶ 75-76.)

    The defendant now brings this motion seeking dismissal of
the plaintiffs' record-keeping and breach of fiduciary duty
claims under ERISA.  The defendant also moves to dismiss
plaintiff Shen's claim under California state law, which he
seeks to bring on behalf of a California subclass, and to strike
the class allegations asserted in that claim.  Finally, the
defendant moves to strike the plaintiffs' claims for injunctive
relief.


                              III.

    The defendant first moves to dismiss the plaintiffs' First
Claim for Relief, namely the claim for failure to maintain
accurate records.  The defendant contends that the plaintiffs
cannot bring this claim under either section 209(a)(1) or
section 502(a)(3) of ERISA.  The defendant also asserts that the
plaintiffs have failed to state a claim for violation of the
ERISA record-keeping requirement.


                               A.

    Section 209(a)(1) of ERISA requires that "every employer
shall . . . maintain records with respect to each of his
employees sufficient to determine the benefits due or which may

                               6

become due to such employees." 29 U.S.C. § 1059(a)(1).  Section 209(b) provides that "[i]f any person who is required . . . to furnish information or maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary a civil penalty of $10 for each employee with respect to whom such failure occurs . . . ." 29 U.S.C. § 1059(b).

Courts have interpreted this language to mean that section 209 does not create a private right of action but instead affords the remedy of a civil penalty to be paid to the Secretary of Labor.  See, e.g., Kifafi v. Hilton Hotels Ret. Plan, 616 F. Supp. 2d 7, 37-38 (D.D.C. 2009); Premick v. Dick's Sporting Goods, Inc., No. 06 Civ. 530, 2007 WL 141913, at *6 (W.D. Pa. Jan. 18, 2007); Colin v. Marconi Commerce Sys. Emps.' Ret. Plan, 335 F. Supp. 2d 590, 606 (M.D.N.C. 2004); Lowe v. Telesat Cablevision, Inc., 837 F. Supp. 410, 412 (M.D. Fla. 1993); Cartelli v. Plumbers and Steamfitters Local Union No. 422 Pension Fund, No. 89 Civ. 6783, 1991 WL 150039, at *3 (N.D. Ill. July 31, 1991).

The plaintiffs do not dispute that a private right of action is unavailable under section 209(a) of ERISA.[1]  Instead, they contend that they have the right to sue under section 502(a)(3), ERISA's "catch-all" provision, which provides that:

---

[1]  Hr'g Tr., 24-25, Dec. 20, 2011 ("Tr.").

> [a] civil action may be brought —
>
> . . .
>
> by a participant, beneficiary, or fiduciary (A) to enjoin
> any act or practice which violates any provision of this
> subchapter or the terms of the plan, or (B) to obtain other
> appropriate equitable relief (i) to redress such violations
> or (ii) to enforce any provisions of this subchapter or the
> terms of the plan[.]

29 U.S.C. § 1132(a)(3). The relief available under this

provision is limited to equitable relief: monetary damages are

generally unavailable. See Lee v. Burkhart, 991 F.2d 1004, 1011

(2d Cir. 1993); Harrison v. Metro. Life Ins. Co., 417 F. Supp.

2d 424, 433 (S.D.N.Y. 2006).

District courts in this Circuit that have confronted ERISA

record-keeping claims brought under section 502(a)(3) have

deemed such claims to be disguised claims for benefits properly

brought under section 502(a)(1)(B) of ERISA rather than claims

for equitable relief which may permissibly be brought under

section 502(a)(3). For example, in DeSilva v. North Shore-Long

Island Jewish Health System, Inc., 770 F. Supp. 2d 497, 537

(E.D.N.Y. 2011), the court concluded that the plaintiffs' ERISA

claim for failure to record hours worked, which purportedly

sought equitable relief under section 502(a)(3), should instead

be construed as a claim for monetary damages. The court

explained that the

> plaintiffs cannot avoid the fact that, ultimately, their
> claim is one for monetary relief. . . . [I]f plaintiffs are

> successful on their claim to be credited for all hours
> worked (assuming *arguendo* that the plan requires such
> crediting) this crediting of hours will result in a
> recalculation of plaintiffs' benefits, which, in turn, will
> result in a monetary gain to plaintiffs.

Id. at 537. The court thus found that "[s]uch a claim should be

brought under Section 502(a)(1)(B), not Section 502(a)(3), and

cannot be brought before plaintiffs have exhausted their

administrative remedies." Id. at 537-38; see also Barrus v.

Dick's Sporting Goods, Inc., 732 F. Supp. 2d 243, 258-59

(W.D.N.Y. 2010) (ERISA claim for failure to record hours worked

was actually asserting a claim for benefits rather than a claim

for equitable relief and could not be brought under section

502(a)(3)) (citing Premick, 2007 WL 141913, at *6).

In this case, like in DeSilva and Barrus, the plaintiffs

purportedly seek injunctive relief requiring the defendant to

credit the plaintiffs and members of the purported ERISA class

for hours worked but not recorded. The logical result of such

crediting of hours would be a recalculation of the plaintiffs'

benefits, which, in turn, would result in monetary relief.

Thus, the "plaintiffs' claim is inextricably intertwined with

the benefits that they will receive under the plan and, as such,

should be construed as [a] plan-based claim seeking monetary

damages." De Silva, 770 F. Supp. 2d at 537. Such a claim must

be brought under section 502(a)(1)(B) of ERISA and is subject to

ERISA's exhaustion requirement. See, e.g., Burke v. Kodak Ret.

Income Plan, 336 F.3d 103, 107 (2d Cir. 2003); Chapman v.

ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 511

(2d Cir. 2002).  The plaintiffs, however, have not pleaded that

they filed any claim under the Plan's claims and appeals

procedures or otherwise exhausted the administrative remedies

specified in the Plan.[2]  The plaintiffs cannot bring their

---

[2] The plaintiffs contend that they should not be required to
exhaust administrative remedies before bringing this action
because doing so would be futile and inadequate.  See, e.g.,
Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594
(2d Cir. 1993) (exhaustion requirement may be excused on grounds
of futility).  The plaintiffs claim that exhaustion would be
futile here because their claims do not stem from the non-
payment of benefits, which could be remedied under the Plan's
administrative process, but rather from a failure to properly
record hours worked, which has resulted in inaccurate payroll
records from which benefits under the Plan are derived.  They
argue that they have no administrative recourse within the Plan
for proper accounting and crediting of hours because the
defendant has not maintained records sufficient to enable such
an accounting to take place.  The plaintiffs, however, cite only
one case that has excused the exhaustion requirement on these
grounds.  See Stickle v. SCIWestern Mkt. Support Ctr., L.P., No.
08 Civ. 83, 2008 WL 4446539, at *17 (D. Ariz. Sept. 30, 2008)
("It would be futile for Plaintiffs to exhaust administrative
remedies with the Plan when, Plaintiffs allege, the Plan has not
been provided a correct record of Plaintiffs['] hours.").
However, no district court in this Circuit has accepted this
argument, and courts in this Circuit have not hesitated to
dismiss ERISA record-keeping claims on the ground that such
claims were disguised claims for benefits under section
502(a)(1)(b) for which exhaustion was required but unsatisfied.
De Silva, 770 F. Supp. 2d at 538; Barrus, 732 F. Supp. 2d at
259.  In order for the exhaustion requirement to be excused, a
plaintiff must "make a clear and positive showing that pursuing
available administrative remedies would be futile . . . ."
Kennedy, 989 F.2d at 594 (internal quotation marks and citations
omitted).  The plaintiffs have not made such a showing here.

record-keeping claim under section 502(a)(1)(B) without first
exhausting administrative remedies.  See Leonelli v. Pennwalt
Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (affirming refusal to
allow plaintiff to amend complaint to add claim for benefits
under section 502(a)(1)(B) where plaintiff "made no attempt, as
required, to exhaust the administrative remedies provided for
under the plan"); De Silva, 770 F. Supp. 2d at 538; Barrus, 732
F. Supp. 2d at 259.

Thus, the plaintiffs' record-keeping claim cannot be
brought under section 502(a)(3) or section 209(a)(1), and the
First Claim for Relief must be dismissed.

B.

The First Claim for Relief should also be dismissed because
the plaintiffs have failed to state a claim for a violation of
section 209(a)(1) of ERISA.  Under section 209(a)(1), an
employer is only required to maintain those records "sufficient
to determine the benefits due or which may become due to such
employees."  29 U.S.C. § 1059(a).  In order to assess what
records are "sufficient to determine the benefits due" to
employees, a court must "evaluat[e] how contributions are
allocated under the pension plan."  Henderson v. UPMC, 640 F.3d
524, 528 (3d Cir. 2011); see also Trs. of Chi. Painters &
Decorators Pension Health & Welfare & Deferred Savings Plan

Trust Funds v. Royal Int'l Drywall & Decorating, Inc., 493 F.3d
782, 786 (7th Cir. 2007) (determining the scope of an employer's
record-keeping duty by assessing which records were necessary
for the calculation of benefits under the plan in question); De
Silva, 770 F. Supp. 2d at 537 ("[T]o know what records are
'sufficient' to determine benefits due, one must refer to the
language of the applicable ERISA plan to determine how benefits
are calculated."); Davis v. Abington Mem'l Hosp., Nos. 09-5520,
09-5533, 09-5548, 09-5549, 09-5590, 09-5551, 2011 WL 4018106, at
*5 (E.D. Pa. Sept. 8, 2011) ("[A]bsent any description of the
terms of the ERISA plans to which Plaintiffs were subject, it is
impossible to determine whether it was the responsibility of the
ERISA plan to keep records, in the first instance, of the number
of hours plaintiffs worked." (internal quotation marks and
citation omitted)).  Where the records an employer allegedly
failed to maintain are not necessary to determine the benefits
due under a particular plan, an ERISA record-keeping claim will
not lie.  See Henderson, 640 F.3d at 529-30; Kuznyetsov v. W.
Penn Allegheny Health Sys., Inc., No. 09 Civ. 379, 2010 WL
597475, at *7 (W.D. Pa. Feb. 16, 2010).

        Here, the only records the plaintiffs claim the defendant
failed to maintain are those indicating the number of hours the
plaintiffs worked.  However, under the Plan at issue in this
case, it is the compensation actually paid to employees, rather

than the number of hours worked, which is relevant to allocating contributions. See Plan at 6 (stating that eligible pay for the purposes of Plan contributions includes "the regular base salary and wages paid in cash, including overtime and shift differentials, paid by an Employer during such Plan Year"); Summary Plan Description at 6 (stating that eligible pay for the purposes of Plan contributions includes "base pay, plus overtime and shift differential paid to you during the calendar year").[3] Thus, under the Plan at issue here, records of hours worked are not records which are necessary "to determine the benefits due" to employees within the meaning of section 209(a)(1) of ERISA. See Henderson, 640 F.3d at 529 (collecting cases finding that, where plan language defined compensation as "amounts paid by an Employer to an Employee" or in similar terms, employer had no obligation under ERISA to record amounts earned or hours worked).

The plaintiffs urge the Court to reach a contrary conclusion, pointing to the Plan's definition of "hours of

---

[3] The Court can properly consider the Plan and the Summary Plan Description on this motion to dismiss because they are essential to the plaintiffs' ERISA claims and incorporated by reference into their complaint. See Chambers, 282 F.3d at 152-53; De Silva, 770 F. Supp. 2d at 545 n.22 (court could consider plan document because the plaintiffs' ERISA record-keeping and breach of fiduciary duty claims were "based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint").

service." This definition does account for not only the number of hours for which an employee is actually paid but also the number of hours for which the employee is entitled to payment. (Plan at 11.) However, the number of "hours of service" an employee performs is only relevant to determining whether certain part-time or temporary employees are eligible to participate in the Plan in the first instance,[4] not to calculating benefits once an employee is participating. (Plan at 24.) See Mathews v. ALC Partner, Inc., No. 08 Civ. 10636, 2009 WL 3837249, at *6-*7 (E.D. Mich. Nov. 16, 2009) (rejecting plaintiffs' reliance on definition of "hours of service" that included hours for which an employee was entitled to compensation, reasoning that the number of hours of service performed did not factor into the calculation of benefits under the plan).

The plaintiffs also refer to a provision in the Summary Plan Description which requires that eligible pay be "earned and paid" while the employee is an eligible employee of the company. (Summary Plan Description at 6.) The plaintiffs interpret this provision to mean that compensation that is earned but not paid is relevant to calculation of benefits under the Plan. (Tr. at

---

[4] It is undisputed that the plaintiffs here were full-time employees who were automatically eligible to participate in the Plan without any preliminary calculation of the hours of service they had performed.

14

19-21.)  However, this interpretation is not persuasive.  The
provision makes clear that, to constitute eligible pay under the
Plan, the compensation must be both "earned" <u>and</u> "paid."
(Summary Plan Description at 6.)  Accordingly, compensation that
is earned but not actually paid does not constitute eligible pay
under the Plan.

Thus, because the Plan at issue here determines benefits
based on the compensation paid to employees rather than the
number of hours worked, any alleged failure by the defendant to
maintain records of hours worked does not constitute an ERISA
record-keeping violation.  <u>See, e.g.</u>, <u>Henderson</u>, 640 F.3d at 530
(affirming dismissal of ERISA claim asserting failure to record
hours worked because the plan in question tied contributions and
benefits to compensation paid rather than to uncompensated hours
worked); <u>Kuznyetsov</u>, 2010 WL 597475, at *7 (dismissing ERISA
record-keeping claim on same grounds); <u>Mathews</u>, 2009 WL 3837249,
at *7 (same).  Section 209(a)(1) of ERISA imposes no independent
requirement on an employer to maintain records of the hours its
employees work when such records are not necessary to "determine
the benefits due or which may become due to such employees."  29
U.S.C. § 1059(a)(1).  Accordingly, the plaintiffs have failed to
state a claim for a violation of ERISA's record-keeping
requirement.  For this reason, and because the plaintiffs cannot
bring a record-keeping claim under section 209(a)(1) or section

15

502(a)(3) of ERISA, the defendant's motion to dismiss the
plaintiffs' ERISA record-keeping claim is **granted** and this claim
is **dismissed with prejudice.**[5]

## IV.

The defendant next moves to dismiss the plaintiffs' Second
Claim for Relief for breach of fiduciary duty under ERISA.

Section 404(a)(1) of ERISA provides that an employee
benefit plan fiduciary shall, among other obligations,
"discharge his duties with respect to a plan solely in the
interest of the participants and beneficiaries . . . ."  29
U.S.C. § 1104.  ERISA defines a plan fiduciary as a person who,
among other functions, "exercises any discretionary authority or
discretionary control respecting management of such plan or
exercises any authority or control respecting management or
disposition of its assets" or "has any discretionary authority

---

[5] The plaintiffs seek leave to amend the complaint in the event
the Court deems the defendant's motion to have merit.  However,
the plaintiffs were already given an opportunity to amend the
complaint in response to a prior motion to dismiss by the
defendant and were put on notice that, if any claims in the
amended complaint were dismissed, such dismissal would be with
prejudice.  Memorandum Opinion and Order, Winfield v. Citibank,
N.A., 10 Civ. 7304 (S.D.N.Y. Apr. 13, 2011); see also Abu Dhabi
Commercial Bank v. Morgan Stanley & Co., No. 08 Civ. 7508, 2009
WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) ("[A] dismissal with
prejudice is generally appropriate where a court puts a
plaintiff on notice of a complaint's deficiencies and the
plaintiff fails to correct those deficiencies after
amendment.").

or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). To qualify as a fiduciary under this definition, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." De Silva, 770 F. Supp. 2d at 539 (quoting Pegram v. Herdrich, 530 U.S. 211, 226 (2000)).

Here, the plaintiffs allege that the defendant breached its fiduciary duties under ERISA by "failing to credit and/or pay compensation due for overtime performed by Plaintiffs and the members of the ERISA Class as Eligible Compensation under the Citigroup Plan." (Am. Compl. ¶ 81.) However, the crediting of hours worked is not a fiduciary function where, as here, the number of hours worked does not factor into the calculation of benefits under the plan in question. "[W]here an ERISA plan defines benefits in terms of compensation, and where compensation is tied to wages actually paid, employers are not obligated to credit employees for 'all hours worked,' and thus, the failure to credit those hours does not constitute a breach of fiduciary duty under ERISA." De Silva, 770 F. Supp. 2d at 541; see also Henderson, 640 F.3d at 530 (affirming dismissal of breach of fiduciary duty claim for failure to credit overtime

17

hours worked where number of hours worked was not relevant to calculation of benefits under the plan); Kuznyetsov, 2010 WL 597475, at *7 (dismissing breach of fiduciary duty claim on same grounds); Mathews, 2009 WL 3837249, at *7 (same); Zipp v. World Mortg. Co., 632 F. Supp. 2d 1117, 1125 (M.D. Fla. 2009) (same); LePage v. Blue Cross & Blue Shield of Minn., No. 08 Civ. 584, 2008 WL 2570815, at *6 (D. Minn. June 25, 2008) (same).  Because the Plan in this case calculates benefits based on compensation actually paid rather than compensation earned through hours worked, the failure to credit such hours does not constitute a breach of fiduciary duty.[6]

The plaintiffs cite a line of cases holding that claims for breach of fiduciary duty premised on a failure to credit hours worked could not be dismissed at the pleading stage.  See Stickle, 2008 WL 4446539, at *19 ("Under ERISA, crediting hours is a fiduciary function . . . ."); In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig., No. MDL 33-1439, 2005 WL 1972565, at *5 (D. Or. Aug. 15, 2005) (concluding that plaintiffs' allegations that defendants failed to credit overtime hours worked stated a claim for breach of fiduciary

---

[6] The defendant also asserts that it cannot be characterized as a plan fiduciary because it has no discretion or authority over crediting compensation under the Plan.  However, the Court need not reach this argument because, regardless of whether the defendant qualifies as a plan fiduciary, the crediting of hours worked is not a fiduciary function under the Plan at issue in this case.

duty); cf. Rosenburg v. Int'l Bus. Machines Corp., No. 06 Civ. 430, 2006 WL 1627108, at *5 (N.D. Cal. June 12, 2006) (holding that whether the alleged failure to credit hours worked constituted a breach of fiduciary duty was a fact-intensive inquiry inappropriate for resolution on a motion to dismiss). However, these cases did not analyze the language of the applicable plans, and their reasoning has been widely rejected, including by district courts in this Circuit.  See De Silva, 770 F. Supp. 2d at 544-45 (rejecting Stickle, Rosenburg, and Farmers as "provid[ing] virtually no legal analysis or analysis of the applicable plan language in support of their conclusion"); Barrus, 732 F. Supp. 2d at 257 ("The Court is not persuaded by the reasoning in Stickle."); LePage, 2008 WL 2570815, at *7 (rejecting these cases as unpersuasive and as not sufficiently addressing "the policy implications of recognizing such a sweeping fiduciary duty"); Steavens v. Elec. Data Sys. Corp., No. 07 Civ. 14536, 2008 WL 3540070, at *3 (E.D. Mich. Aug. 12, 2008) (finding that Rosenberg and Farmers contained "little or no analysis" and did not "adequately address[] the specific language of the benefits plans at issue"); cf. Mathews v. ALC Partner, Inc., No. 08 Civ. 10636, 2008 WL 5188760, at *6-*7 (E.D. Mich. Dec. 9, 2008) (reading this line of cases as applicable only where the plan in question measures

contributions based on number of hours worked rather than wages actually paid).[7]

Indeed, there are sound policy reasons for rejecting this line of cases.  If ERISA imposed a fiduciary duty to ensure that all overtime hours worked were properly recorded and compensated, irrespective of how benefits are calculated under the applicable plan, then every violation of the FLSA would give rise to a violation of ERISA.[8]  This was not the intent of Congress in enacting ERISA.  As the Supreme Court has explained:

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. . . . [T]he danger of defeated

---

[7] At oral argument, counsel for the plaintiffs suggested that a breach of fiduciary duty claim could also arise from the defendant's failure to ascertain the accuracy of contributions under the Plan and failure to ensure that compensation earned was in fact paid. (Tr. at 21.)  However, it is clear that "[w]here the Plan itself imposes no obligation to credit for such hours or to base benefits determinations on compensation that might be owing to employees, plan administrators do not have an obligation to double-check whether employers are fulfilling their statutory and contractual payment obligations to employees."  De Silva, 770 F. Supp. 2d at 543; see also LePage, 2008 WL 2570815, at *5-*7 (rejecting argument that defendant had a fiduciary duty to "evaluate whether employees had some legal claim to additional compensation").

[8] At oral argument, plaintiffs' counsel agreed that this would be the logical result of the argument advanced by the plaintiffs. See Tr. at 21 ("[The Court:] If you say there's a fiduciary obligation on the part of the administrator to assure that all overtime is in fact paid so that ERISA benefits are triggered then, of necessity, every violation of the Fair Labor Standards Act is a violation of ERISA, right?  [Plaintiffs' counsel:] Yes, your Honor.")

> expectations of wages for services performed [is] a danger
> Congress chose not to regulate in ERISA.

Massachusetts v. Morash, 490 U.S. 107, 115 (1989).  Ensuring

that employees are properly compensated for hours worked is

instead the province of other federal statutes such as the FLSA.

See Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448

F.3d 252, 261 (4th Cir. 2006) ("[ERISA] was not designed to

address every conceivable aspect of an employee's monetary

rights, and it is not primarily concerned with hourly wages and

overtime pay, the domain of the FLSA and its state

counterparts.").  Imposing "[s]uch a far-reaching duty would

send the administration of [ERISA pension plans] into gridlock

and dramatically increase the cost of administering [such

plans]." LePage, 2008 WL 2570815, at *7.

Moreover, treating a failure to credit overtime hours

worked as a fiduciary duty under ERISA would allow future

plaintiffs to circumvent the opt-in requirement for FLSA

collective actions by instead bringing claims for unpaid

overtime as opt-out class actions under ERISA, effectuating an

immense sub rosa expansion of the FLSA.

Accordingly, the sweeping definition of fiduciary duties

under ERISA that the plaintiffs urge the Court to adopt is not

persuasive.  Thus, any alleged failure by the defendant to

credit overtime hours worked or to ascertain the accuracy of

contributions under the Plan in question here does not constitute a breach of fiduciary duty under ERISA.  The defendant's motion to dismiss the plaintiffs' ERISA breach of fiduciary duty claim is therefore **granted** and the Second Claim for Relief is **dismissed with prejudice.**

**V.**

The defendant next moves to dismiss the Sixth Claim for Relief, namely plaintiff Shen's claim under California law, which he seeks to bring on behalf of a California sub-class. The defendant argues that the claim should be dismissed under the abstention doctrine set forth in <u>Colorado River Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), and that plaintiff Shen's class allegations should be stricken because the adequacy and superiority requirements set forth in Federal Rule of Civil Procedure 23 are not satisfied.

A.

<u>Colorado River</u> abstention arises in limited "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." <u>Colorado River</u>, 424 U.S. at 817.  The doctrine presents an "extraordinary and narrow exception" to "the virtually unflagging obligation of the federal courts to

22

exercise the jurisdiction given them." <u>Id.</u> at 813, 817
(internal quotation marks and citation omitted).  The threshold
inquiry for determining whether abstention is appropriate is
"whether the state and federal proceedings are indeed parallel,
<u>i.e.</u> whether substantially the same parties are litigating the
same issues in a state forum." <u>Mouchantaf v. Int'l Modeling &
Talent Ass'n</u>, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005) (citation
omitted).  If the proceedings are indeed parallel, the Court
must then consider six factors set forth in Supreme Court
precedent to determine whether extraordinary circumstances
warranting abstention are present, "with the balance heavily
weighted in favor of the exercise of jurisdiction." <u>Moses H.
Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16
(1983).[9]

The defendant argues that <u>Colorado River</u> abstention is
appropriate here because plaintiff Shen's California class claim
is parallel to an action brought in California state court two
years prior to this case ("the <u>Davis</u> case").  The <u>Davis</u> case, in
which Citibank is the only defendant, is a purported California
class action that is premised on the same California statutes

---

[9] These six factors are: "(1) assumption of jurisdiction over a
res; (2) inconvenience of the forum; (3) avoidance of piecemeal
litigation; (4) order in which the actions were filed; (5) the
law that provides the rule of decision; and (6) protection of
the federal plaintiff's rights." <u>Mouchantaf</u>, 368 F. Supp. 2d at
306 (quoting <u>FDIC v. Four Star Holding Co.</u>, 178 F.3d 97, 101 (2d
Cir. 1999)).

and similar factual allegations of unpaid overtime.  The
defendant contends that proceeding with plaintiff Shen's later-
filed, duplicative California state law claims in federal court
would be an inefficient use of limited judicial resources.

 The defendant has not established a basis for Colorado
River abstention at this stage of the litigation.  The Court is
not yet being asked to decide whether it is appropriate to
certify the California subclass on whose behalf plaintiff Shen
seeks to bring his claim, such that there would be a class
action in New York which is potentially duplicative of the Davis
case for which a class certification motion is pending in
California.  Instead, at this time, plaintiff Shen has an
individual claim under California law, over which the Court can
properly exercise supplemental jurisdiction because the claim
shares a common nucleus of operative fact with the FLSA claim
that remains to be decided in this action.  See 28 U.S.C. §
1367(a).  It would be premature to dismiss plaintiff Shen's
individual claim merely because he also seeks to bring his claim
on behalf of a class, given that no class certification motion
is before the Court at this time, and no class has even been
certified in the Davis action.

 The defendant argues that plaintiff Shen's claim should
nonetheless be dismissed at this stage because the class-related
discovery pending a class certification decision would be

burdensome and costly.  However, there is nothing in the
defendant's papers in connection with this motion indicating
that any such discovery would be unduly burdensome.  Moreover,
because discovery will proceed in any event on the plaintiffs'
FLSA claims, which have significant factual overlap with the
California state law claims, the burden associated with
discovery will likely be reduced.  In addition, any arguments
with respect to the burdensome nature of discovery should be
directed at imposing appropriate limits on discovery rather than
dismissing possibly meritorious claims.  See Fed. R. Civ. P.
26(b)(2)(C)(iii) (requirement of proportionality in discovery).

The Colorado River doctrine does not require abstention
merely because parallel federal and state court actions are
proceeding simultaneously.  To the contrary, abstention is only
appropriate where extraordinary circumstances weighing against
the exercise of jurisdiction are present.  The defendant has not
demonstrated that such extraordinary circumstances exist here.
Thus, the defendant's motion to dismiss plaintiff Shen's
California law claim is **denied.**  The denial is **without prejudice**
to reassertion at a subsequent time, if class-related discovery
with respect to plaintiff Shen's claim becomes burdensome or
duplicative, or at the class certification stage.

**B.**

The defendant also moves to strike plaintiff Shen's class allegations, asserting that the adequacy and superiority requirements of Rule 23 are not satisfied.

"Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." In re Tronox Sec. Litig., No. 09 Civ. 6220, 2010 WL 2835545, at *4 (S.D.N.Y. June 28, 2010). Moreover, "[a] motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Chenensky v. N.Y. Life Ins. Co., No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (quoting Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)). Accordingly, district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination. See, e.g., Chenensky, 2011 WL 1795305, at *4; Ironforge, 747 F. Supp. 2d at 404; Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 324 (S.D.N.Y. 2010); Ruggles v. Wellpoint, Inc.,

253 F.R.D. 61, 67 (N.D.N.Y. 2008).  In this case, as well, the defendant's motion to strike plaintiff Shen's class allegations is premature and should await a decision on class certification where the Court will have the benefit of a full factual record and can better assess whether the adequacy and superiority requirements of Rule 23 are met.  The defendant's motion to strike is therefore **denied without prejudice** to the defendant's ability to oppose class certification on these same grounds.


                                   **VI.**

     Finally, the defendant moves to strike the plaintiffs' claims for injunctive relief.  The defendant, relying on the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2559-60 (2011), argues that, because all of the named plaintiffs are former employees of the defendant, they lack standing to bring a claim for injunctive relief against the defendant.

     It is appropriate to defer standing objections until after class certification where certification issues are "'logically antecedent' to Article III concerns."  Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612 (1997)).  While the contours of the "logically antecedent" rule have not been defined by the Court of Appeals for the Second Circuit, "there has been a growing

                                    27

consensus among district courts that class certification is
'logically antecedent,' where its outcome will affect the
Article III standing determination, and the weight of authority
holds that in general class certification should come first."
Blessing v. Sirius XM Radio, Inc., 756 F. Supp. 2d 445, 451
(S.D.N.Y. 2010).  While the named plaintiffs in a class action
"must have standing to sue the defendant on 'at least some
claims,' whether they may bring each claim asserted on behalf of
the proposed class is properly determined after class
certification is decided."  Id. at 452 (quoting In re Buspirone
Patent Litig., 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002)).

     In this case, it is undisputed that each of the named
plaintiffs has standing to bring at least some claims.
Moreover, the class certification process is "logically
antecedent" to Article III concerns in this case.  If any
proposed class includes plaintiffs who are current employees of
the defendant and thus have standing to bring claims for
injunctive relief, the only relevant question will be whether
the injuries of the named plaintiffs are "sufficiently similar
to those of the purported Class to justify the prosecution" of
such a class action.  In re Grand Theft Auto Video Game Consumer
Litig. (No. II), No. 06 MD 1739, 2006 WL 3039993, at *3
(S.D.N.Y. Oct. 25, 2006).  This question is, "at least in the
first instance, appropriately answered through the class

certification process." Id.  Indeed, district courts in this
Circuit have held that it is appropriate to defer standing
questions until after class certification in similar
circumstances.  See In re Digital Music Antitrust Litig., No. 06
MD 1780, 2011 WL 2848195, at *10 (S.D.N.Y. July 18, 2011);
Blessing, 756 F. Supp. 2d at 452; Woodhams v. Allstate Fire &
Cas. Co., 748 F. Supp. 2d 211, 217 n.3 (S.D.N.Y. 2010), aff'd
No. 10-4389, 2012 WL 5834 (2d Cir. Jan. 3, 2012); La Pietra v.
RREEF Am., L.L.C., 738 F. Supp. 2d 432, 439 n.1 (S.D.N.Y. 2010).
Thus, in this case, it is appropriate to decide class
certification before resolving the defendant's Article III
standing challenge.

The defendant, however, argues that any addition of current
employees into the prospective class would not cure the standing
problems raised here, contending that the Supreme Court in Dukes
held that the proper remedy when faced with a prospective Rule
23(b)(2) class consisting of both current and former employees
is to refuse to certify the class, rather than to cull the class
of former employees.  See Dukes, 131 S. Ct. at 2559-60.
However, the question of whether it is appropriate to certify a
Rule 23(b)(2) class composed of both current and former
employees is not a question pertaining to standing but rather a
question pertaining to class certification that should be
resolved on a motion for class certification.

Accordingly, it is appropriate to defer the defendant's standing objections to the claims for injunctive relief until after the class certification determination.  The defendant's motion to strike the plaintiffs' claims for injunctive relief is therefore **denied without prejudice.**

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendant's motion is **granted in part** and **denied in part**.  The Clerk is directed to close Docket No. 33.


**SO ORDERED.**

**Dated:      New York, New York**
          **January 27, 2012**

                                    John G. Koeltl
                              United States District Judge